1
2
3                    UNITED STATES DISTRICT COURT
4                  NORTHERN DISTRICT OF CALIFORNIA
5
6
7    MARK GOINGS,
8              Plaintiff,                      No. C 08-2544 PJH
9         v.                                   **ORDER GRANTING SUMMARY**
                                               **JUDGMENT**
10   SGT. ELLIOT, et al.,
11              Defendants.
     _____/
12
13        Defendants' motion to strike plaintiff's opposition brief and for summary judgment
14   came on for hearing on January 20, 2010 before this court.  Plaintiff, Mark Goings
15   ("plaintiff" or "Goings"), appeared through his counsel, Jeffery Kallis.  Defendants City and
16   County of San Francisco, the San Francisco Police Department, Police Chief Heather
17   Fong, Sergeant David Elliott, and Officer Paul Dennes (collectively "defendants"), appeared
18   through their counsel, Robert Bonta.  Having read all the papers submitted and carefully
19   considered the relevant legal authority, the court hereby GRANTS defendants' motion for
20   summary judgment, for the reasons stated at the hearing, and as follows.
21                              **BACKGROUND**
22        This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff generally
23   alleges that in August 2007, he was wrongfully detained at the San Francisco International
24   airport by defendants Officer Dennes and Sgt. Elliott of the San Francisco Police
25   Department, in violation of plaintiff's federal and constitutional rights.  See generally
26   Complaint ("Complaint").
27   A.   Specific Allegations
28        Plaintiff, who is employed as a police officer, was once married to Shirley Goings,

United States District Court

For the Northern District of California

and the two have a minor child together, Aubrey Goings.  The marriage was terminated in February 2006, resulting in issuance of a child custody order by a California state court, governing the custody arrangement between the parents.  See Complaint at ¶ 13.

In accordance with the terms of that order, plaintiff (accompanied by his girlfriend at the time) took his daughter with him on a trip to Hawaii, from August 1, 2007 to August 14, 2007.  Id. at ¶ 12.  Plaintiff's return flight from Hawaii arrived at SFO on Tuesday, August 14, at approximately 9:30 p.m.  Id.  The carrier was United Airlines.  Plaintiff alleges that he and his ex-wife had agreed, in accordance with the custody order, that Ms. Goings would pick Aubrey up either at the assigned gate or at baggage claim.  See Complaint, ¶ 13.

Approximately 35 minutes prior to landing, however, plaintiff alleges that he and the other passengers on the United flight were notified over the intercom that "the authorities in San Francisco will be boarding the aircraft upon our arrival at the airport."  Id. at ¶ 14. Once the flight arrived in San Francisco, the plane was stopped on the tarmac and held for approximately 10 to 15 minutes.  Id. at ¶ 16.  The flight then proceeded to the gate, and upon arrival at the gate a further announcement was made that all passengers were to remain seated, with the exception of Mr. Goings – who was asked to proceed to the front of the airplane.  Id.  Plaintiff, with his daughter, proceeded to the front of the aircraft, where they were met by a uniformed and armed officer – defendant Officer Dennes.  Complaint, ¶ 17.  Officer Dennes requested that plaintiff identify himself, and then ordered plaintiff and his daughter to proceed with him up the jetway.  Id. at ¶ 18.  Despite several inquiries by plaintiff, Officer Dennes allegedly failed to inform plaintiff as to the reasons for the Officer's request.  Id.

Once in the airport terminal, Sgt. Elliott appeared, and informed plaintiff, in response to plaintiff's further inquiries, that defendants were "just trying to keep [Mr. Goings] out of trouble."  Complaint, ¶ 19.  Sgt. Elliott then allegedly told plaintiff that Shirley Goings had called the police and advised them that she feared plaintiff might bypass baggage claim and fail to hand over their daughter as agreed.  Id. at ¶ 20.  Plaintiff alleges that he then

2

United States District Court

For the Northern District of California

1   made several unambiguous requests to be allowed to proceed with his daughter (and his

2   accompanying girlfriend) to the baggage claim area, so that he could give is ex-wife

3   physical custody of their daughter, and retrieve his baggage.  Id. at ¶ 21.  According to

4   plaintiff, however, defendants denied these requests and refused to allow Mr. Goings and

5   his daughter to leave.  Instead, plaintiff and his daughter were ordered to remain where

6   they were and were kept in the airport terminal against their will for ten to fifteen minutes, at

7   which point the officers informed plaintiff that he should accompany the officers to the

8   baggage claim area.  See Complaint, ¶¶ 21-22.

9       Plaintiff further alleges that, although he made further inquiries as to why he could

10  not go with his daughter to the baggage area unescorted, defendants failed to provide any

11  factual basis other than to state that they were there in order to protect the plaintiff –

12  protection which plaintiff had not requested.  Id. at ¶ 24.

13      Halfway to the baggage claim area from the terminal, plaintiff alleges that he advised

14  defendants that he refused to go any further with them and that they should either arrest

15  him, or let him go.  After several further refusals by the plaintiff to allow himself to be

16  accompanied to the baggage claim area, defendants finally told the plaintiff that he and his

17  daughter could leave, and plaintiff proceeded to the baggage claim area unaccompanied.

18  Id. at ¶ 25.

19  B.    Procedural Background

20      Plaintiff filed the instant action on May 20, 2008.  Plaintiff originally asserted therein

21  four causes of action against defendants: (1) false imprisonment and unlawful detention,

22  pursuant to 42 U.S.C. § 1983 (against defendants Elliott and Dennes); (2) false detention,

23  arrest, and/or imprisonment, pursuant to Cal. Civil Code § 52 et seq. (defendants Elliott and

24  Dennes); (3) conspiracy to violate civil rights, pursuant to 42 U.S.C. § 1983 and Cal. Civil

25  Code § 52 et seq. (defendants Elliott and Dennes); and (4) violation of 42 U.S.C. § 1983,

26  under Monell liability principles (defendant City and County of San Francisco).  See

27  Complaint, ¶¶ 26-58.

28

United States District Court
For the Northern District of California

1   However, after defendants filed the instant motion for summary judgment as to all

2   causes of action, plaintiff subsequently sought leave to withdraw and/or dismiss his fourth

3   cause of action against defendants Heather Fong, and the City and County of San

4   Francisco.  The court having GRANTED plaintiff's request at the hearing, defendants now

5   seek summary judgment as to the remaining first three causes of action, against

6   defendants Elliott and Dennes, only.

7   In connection with the motion, defendants have also moved to strike plaintiff's late-

8   filed opposition, while plaintiff, for his part, has also separately filed evidentiary objections.[1]

9                                   **DISCUSSION**

10  A.    Legal Standard

11  Summary judgment is appropriate when there is no genuine issue as to material

12  facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

13  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

14  Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

15  is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

16  A party seeking summary judgment bears the initial burden of informing the court of

17  the basis for its motion, and of identifying those portions of the pleadings and discovery

18  responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

19  v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

20  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

21  than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

22

23  ─────────────────────

23  [1]    Plaintiff's opposition brief and evidentiary objections were filed on January 6,
24  2010, a full week after the deadline to file any opposition had already passed.  The late-filed
    documents were submitted with no explanation for the belated filing, nor did plaintiff otherwise
25  request leave of court to file his papers late.  At the hearing on the matter, plaintiff furthermore
    failed to present a satisfactory explanation for the late filing of his papers.  As a result, and in
26  view of the undue prejudice plaintiff's late-filed papers caused defendants – who were unable
    to prepare and submit a reply brief in advance of the hearing – the court accordingly GRANTS
27  defendants' motion to strike the opposition brief.  The court also takes the opportunity to
    OVERRULE plaintiff's evidentiary objections, as they are overly broad, and without substantive
28  merit.

4

United States District Court

For the Northern District of California

1    888 (9th Cir. 2003).

2        On an issue where the nonmoving party will bear the burden of proof at trial, the

3    moving party can prevail merely by pointing out to the district court that there is an absence

4    of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25.  If the

5    moving party meets its initial burden, the opposing party must then set forth specific facts

6    showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

7    R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

8    B.    Analysis

9        Defendants' motion raises and requires resolution of five arguments:  (1) whether,

10   for purposes of plaintiff's 42 U.S.C. § 1983 claim, plaintiff's August 2007 encounter with

11   defendant officers was consensual; (2) whether, if not, defendants Elliott and Dennes had

12   reasonable suspicion or probable cause to detain/arrest plaintiff for violation of a court

13   order, keeping a child from a lawful custodian; and/or kidnapping; (3) whether, even if

14   probable cause/reasonable suspicion was lacking, defendants' actions are protected by the

15   qualified immunity doctrine; (4) whether plaintiff can prove a viable conspiracy claim as

16   alleged pursuant to 42 U.S.C. § 1983 and Cal. Civil Code § 52; and (5) whether plaintiff can

17   satisfy the elements of his independent claim under Civil Code § 52 et seq.

18       1.    Whether the August 2007 Encounter was Consensual

19       Defendants first assert that plaintiff's false detention and imprisonment claims

20   pursuant to § 1983 fail, because the undisputed facts demonstrate that no detention or

21   arrest occurred.  Rather, defendants contend that plaintiff's encounter with the officers was

22   consensual – a circumstance that triggers no Fourth Amendment scrutiny.  To this, plaintiff

23   responds that from start to end, the encounter between plaintiff and defendants was

24   marked by a sufficient show of force and followed by sufficient demands from the officers,

25   as to invalidate any claim that the encounter was consensual.

26       Courts have long held that consensual encounters do not implicate the Fourth

27   Amendment.  See United States v. Mendenhall, 446 U.S. 544, 552 (1980)(noting that "not

28

5

United States District Court

For the Northern District of California

1    all personal intercourse between policemen and citizens involves 'seizures' of persons");

2    see also, e.g., United States v. Drayton, 536 U.S. 194, 200 (2002)(a police officer may

3    approach a citizen, ask him for identification, ask him questions, and request consent to

4    search him without implicating the Fourth Amendment).  The test for whether an encounter

5    with police is consensual is whether the citizen recognizes that he or she is free to leave.

6    In making this determination, courts look to the totality of the circumstances surrounding

7    the encounter and ask whether a reasonable person in the same circumstances would feel

8    that "'he was not at liberty to ignore the police and go about his business.'"   See Florida v.

9    Bostik, 501 U.S. 429, 434 (1991).

10            Here, plaintiff submits the following facts in support of the purportedly "non-

11   consensual" nature of the August 14 2007 incident: just before the United flight in question

12   landed, while plaintiff was on board in the company of his girlfriend Candice McGregor and

13   his daughter Aubrey Goings, an overhead announcement was made informing all

14   passengers on the airplane that the "authorities" were going to meet the plane in San

15   Francisco, and would be boarding the aircraft.  See Kallis Declaration, Ex. 1 at 147:6-11;

16   Ex. 5 at 28:7-17.  Two further announcements to the same effect were made once the

17   United flight landed on the tarmac, and then once the plane had arrived at the bridge and

18   connected to the jetway, a further specific announcement was made requesting Mr. Goings

19   to proceed to the front of the airplane.  See Kallis Decl., Ex 1 at 148:14-17; Ex. 5 at 28:15-

20   17, 31:14-19.  Plaintiff, along with his daughter, complied with the request to proceed to the

21   front of the airplane.  Once he arrived at the front of the airplane, he was met by Officer

22   Dennes, who was standing at the front door to the airplane, uniformed and armed, and

23   instructed plaintiff to "come with [him]."   See id., Ex. 1 at 161:14-17; 196:4-13; 197:10-17.

24   Plaintiff complied, and after crossing into the terminal and meeting defendant Elliott,

25   defendant Elliott told him that Ms. Goings had called the police and that she was indicating

26   that plaintiff had not planned on exchanging Aubrey at the baggage claim, and was going to

27   bypass the baggage claim.  See Bonta Decl., Ex. D at 203:16-25.  After engaging in a

28

United States District Court

For the Northern District of California

1   series of questions and answers with defendant Elliott, plaintiff indicated he wanted to

2   proceed toward baggage claim, and he did so, escorted initially by defendants Dennes and

3   Elliott.  See Bonta Decl., Ex. D at 214:14-215:11.  When plaintiff finally told defendant Elliott

4   that it was unnecessary for defendant to take plaintiff and his daughter to baggage claim,

5   however, the defendant officers finally agreed, and plaintiff proceeded to baggage claim on

6   his own.  Bonta Decl., Ex. D at 216:8-21.

7           Defendant generally challenges plaintiff's proffer of facts with the following additional

8   facts that tend to establish the consensual nature of any exchange:  that neither defendants

9   Elliott nor Dennes ever told plaintiff he was under arrest or was being detained, nor did they

10  threaten at any time to put plaintiff in jail or take him to a station; that plaintiff was never

11  handcuffed; that, when plaintiff expressed a desire to finally proceed unaccompanied to the

12  baggage claim, the officers complied with plaintiff's request.  See Bonta Decl., Ex. D at

13  210:22-211:7; 216:8-21.  Defendant Elliott also specifically asked plaintiff during their

14  encounter if plaintiff would mind if defendant Elliott walked with him to the baggage claim

15  area, to which plaintiff essentially responded "not at all;" and plaintiff's girlfriend, Ms.

16  McGregor, testified that defendant Elliott asked plaintiff whether defendant Elliott needed to

17  be there for the exchange at the baggage claim area, and plaintiff responded to the effect

18  of, "if you want to be there, you can" or "no, you should go just so Shirley knows...".  See

19  Bonta Decl., Ex. B. at 120:20-121:7; Bonta Decl., Ex. C at 84:8-16.  Furthermore, when

20  specifically asked whether plaintiff was consensually responding to the officers' questions

21  and in turn asking his own questions of the officers, plaintiff answered "yes."  Bonta Decl.,

22  Ex. D at 212:18-22.

23          On balance, and looking to the totality of circumstances surrounding the August

24  2007 encounter, the court concludes that the encounter between plaintiff and defendant

25  officers did not begin as a consensual one.  The fact that the airline made several

26  announcements indicating that "authorities" would be meeting the plane upon landing, that

27  plaintiff was individually singled out and brought to the front of the plane, where he was met

28

7

1    by a fully armed and uniformed officer, and the fact that the plaintiff was escorted down the

2    jetway so that he could "talk to the sergeant," compel the conclusion that a reasonable

3    person faced with the same display of force would not feel that he or she "was [] at liberty

4    to ignore the police and go about his business." Bostik, 501 U.S. at 434.

5         To be sure, the encounter from that point onwards developed in such a way that, at

6    some later point in time, it very well may have become consensual.  Indeed, as defendants

7    note and plaintiff's own testimony corroborates, plaintiff himself viewed much of the

8    interaction with defendants as a consensual exchange, and it was plaintiff who eventually

9    terminated the encounter when he finally and unequivocally expressed his desire to

10   proceed to the baggage claim area alone.  Regardless whether the encounter eventually

11   became a consensual one, however, the fact remains that at the outset, and in view of the

12   display of force demonstrated to plaintiff, the encounter could not be so classified.

13        Thus, the court cannot conclude, as defendants urge, that the encounter between

14   plaintiff and defendants triggered no Fourth Amendment scrutiny – and therefore no section

15   1983 liability – as a matter of law.  Rather, the undisputed facts demonstrate that the

16   encounter began as a non-consensual detention, at a minimum.

17        2.    Reasonable Suspicion/Probable Cause for Detention/Arrest

18        Defendants next contend that, even if the encounter with plaintiff was non-

19   consensual, plaintiff's false arrest and false imprisonment claims still fail because the

20   undisputed facts demonstrate that defendants Elliott and Dennes had probable cause

21   and/or reasonable suspicion to arrest or detain plaintiff for violations of Cal. Penal Code §

22   166 (violation of lawful court order); Cal. Penal Code § 278 (keeping child from lawful

23   custodian); Cal. Penal Code § 278.5 (keeping child from lawful custodian or of person from

24   right to visitation); and Cal. Penal Code § 207 (kidnapping).

25        A detention is reasonable under the Fourth Amendment when the detaining officer

26   can point to specific articulable facts that, considered in light of the totality of the

27   circumstances, provide some objective manifestation that the person detained may be

28

8

United States District Court

For the Northern District of California

1  involved in criminal activity.  See United States v. Woods, 720 F. 2d 1022, 1026 (9th Cir.

2  1983); United States v. Cortez, 449 U.S. 411, 417 (1981)(detention under the Fourth

3  Amendment "must be justified by some objective manifestation that [subject was], or [was]

4  about to be, engaged in criminal activity").  Probable cause to arrest, by contrast, exists

5  when under the totality of the circumstances known to the arresting officer, a prudent

6  person would conclude that there is a fair probability that the arrestee had committed or

7  was committing a crime.  United States v. Smith, 790 F.2d 789, 792 (9th Cir.1986).  The

8  inquiry focuses on the perspective of the person allegedly seized, rather than the subjective

9  beliefs of the law enforcement officers.  Eberle v. City of Anaheim, 901 F.2d 814, 819 (9th

10  Cir. 1990); United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295 (9th Cir.1988)("The

11  proper focus when determining coerciveness or restraint sufficient to constitute an arrest or

12  detention is not on the subjective belief of the agents.  Rather we review the situation from

13  the prospective of the person seized.").  The plaintiff in a civil rights action has the burden

14  of proving lack of probable cause, after a defendant has provided "some evidence that the

15  arresting officers had probable cause at the moment of the arrest."  Dubner v. City &

16  County of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001).

17      With respect to the statutory provisions at issue, Cal. Penal Code § 166 provides

18  that a person is guilty of a misdemeanor if he/she is guilty of: "willful disobedience of the

19  terms as written of any process or court order or out-of-state court order, lawfully issued by

20  any court, including orders pending trial;" or else is guilty of "resistance willfully offered by

21  any person to the lawful order or process of any court."  Cal. Penal Code §§ 278 and 278.5

22  violations occur when a person, with the intent to detain and conceal a child from its parent

23  or person having lawful charge of the child, regardless of whether the detention and

24  concealment actually occur, takes or entices away the child.  See, e.g., People v. Bormann,

25  6 Cal. App. 3d 292 (1970).  Finally, Cal. Penal Code § 207 prevents the forcible taking of a

26  person or child.

27      Defendants assert that the undisputed facts demonstrate the existence of

28

9

United States District Court

For the Northern District of California

1   reasonable suspicion and/or probable cause as to plaintiff's violation of all these statutes.

2   First, defendants point to the emails exchanged between the plaintiff and Ms. Goings prior

3   to August 14, as well as the child custody order in the case – both of which Ms. Goings

4   handed to defendants – which indicated that plaintiff may have violated, or might be about

5   to violate, a provision of the custody order requiring thirty days' notice from one parent to

6   the other, prior to a travel departure.  <u>See</u> Def. Br. at 13.  Plaintiff's email to Ms. Goings

7   admitted, for example, that he was "late in providing a specific 'official' itinerary."  <u>See</u>

8   Bonta Decl., Ex. A at Ex. C-5 to depo.  Furthermore, plaintiff's arrival with his daughter was

9   a few hours short of violating the 14 day vacation time frame imposed by the court order.

10  <u>See id</u>. at 14.  All of which is sufficient, defendants contend, to demonstrate a probable

11  violation of Penal Code § 166 – which prohibits violation of a court order.  Second, and as

12  for Penal Code § 278, 278.5, and 208, all of which have to do with the unlawful taking of a

13  child, defendants assert that based on the fact that Ms. Goings initially provided to

14  defendants information that she had been denied access to the United gate and so feared

15  her child would be taken past the baggage claim area and not dropped off, this information

16  constituted articulable facts and/or probable cause for detention and arrest, based on a

17  violation of the foregoing statutes.  <u>See</u> Bonta Decl., Ex. A at 99:18-25; 108:1-23; <u>id</u>., Ex. C

18  at 72:22-73:3.

19       On balance, the court agrees that this undisputed evidence was sufficient to provide

20  to the defendant officers some objective manifestation that plaintiff was about to be

21  involved in unlawful activity; specifically, the unlawful violation of the child custody order in

22  place between the parties, and by necessary overlap, a violation of the Penal Code

23  provisions in question.  Defendants' evidence, combined with the fact that plaintiff himself

24  testifies that he instructed United Airlines to prevent Ms. Goings from going to the gate, and

25  that the defendant officers themselves confirmed and were aware that Ms. Goings had

26  been barred from the gate, constitute specific articulable facts upon which a prudent person

27  might believe that a violation of the above statutes was about to be committed.  <u>See, e.g.</u>,

28

United States District Court

For the Northern District of California

1  Bonta Decl., Ex D at 249:20-250:6.

2       Plaintiff attempts to materially dispute this conclusion with evidence purportedly

3  establishing that defendants did not at the time (and do not now) articulate any specific

4  facts regarding plaintiff's own conduct that might suggest violation of the Penal Code

5  provisions in question.  Plaintiff testified, for example, that he specifically asked defendant

6  Elliot during their encounter whether, if plaintiff "would have proceeded past baggage

7  claim," plaintiff "would have committed a crime" – to which defendant Elliott responded,

8  "no."  See Bonta Decl., Ex. D at 205.  This re-telling furthermore agrees with defendant

9  Elliot's own re-telling, in which he states that during his encounter with plaintiff, "[a]t that

10  point no law had been broken.  In my eyes no law had been broken."  See id., Ex. C at 82.

11  The subsequent police incident reports filed in connection with the encounter, moreover,

12  themselves state only that civil standbys – and nothing criminal – took place.  See Kallis

13  Decl., Exs. 13-16 (background event chronology noting incident as "civil standby for child

14  exchange"; incident report listing type of incident as "civil standby").

15       Ultimately, however, this evidence fails to materially dispute the foregoing evidence

16  establishing the existence of reasonable suspicion to detain plaintiff at the outset.  The

17  question for the court, in other words, is whether the defendant officers could point to

18  specific articulable facts that, considered in light of the totality of the circumstances,

19  provided some objective manifestation that plaintiff was about to engage in criminal activity,

20  *at the time that the defendant officers initially met plaintiff at the airplane* and detained him

21  for questioning.  And in view of the undisputed facts in evidence, the court concludes that

22  the answer to this question is yes.  To that end, it is immaterial whether, during the

23  investigatory questioning that followed and resulted, defendant Elliott ultimately determined

24  that no law had been broken, or that the police incident reports recounted the lack of

25  criminal activity.  Indeed, the purpose of the investigatory detention was precisely so that

26  the defendant officers could more accurately determine whether plaintiff was going to

27  engage in any unlawful activitiy.  And here, the initial detention resulted in an encounter

28

United States District Court

For the Northern District of California

1   spanning approximately 10 to 20 minutes, and lasted only long enough for the officers to

2   determine that no such activity was ultimately going to be committed here, and plaintiff was

3   eventually allowed to continue on to the baggage claim area unescorted.  See Bonta Decl.,

4   Ex. C at 83:3-7.

5        Although the court concludes that the defendant officers possessed reasonable

6   suspicion to detain plaintiff for investigatory questioning when they met him at the airplane

7   and began their encounter with plaintiff, however, the court cannot similarly conclude that

8   probable cause to arrest plaintiff existed.  The foregoing facts simply do not demonstrate

9   any basis for concluding that there was "a fair probability" that plaintiff had committed or

10  was committing a crime.

11       In sum, therefore, on the basis of the purportedly undisputed facts thus far

12  presented, the court holds that defendant officers possessed reasonable suspicion to

13  detain plaintiff for investigatory question during the encounter in question, and that the

14  detention lasted only long enough for the officers to determine that defendant was not

15  about to engage in criminal activity.  Thus, defendants' encounter with plaintiff, to the extent

16  it constituted a seizure of plaintiff's person pursuant to the Fourth Amendment, was

17  reasonable.

18       Accordingly, the court hereby GRANTS defendants' motion for summary judgment

19  with respect to plaintiff's section 1983 claim.

20       3.   Qualified immunity

21       Defendants also argue that, even if defendants did not have reasonable suspicion to

22  detain or probable cause to arrest plaintiff, defendants are nonetheless protected by the

23  doctrine of qualified immunity.  In view of the foregoing ruling, the court need not and does

24  not reach defendants' qualified immunity defense.  The court furthermore notes, however,

25  that even if the court had not determined that reasonable suspicion to investigatively detain

26  plaintiff existed, it would nonetheless have likely determined that the undisputed facts show

27  that "a reasonable officer could have believed that probable cause [or reasonable

28

United States District Court
For the Northern District of California

1   suspicion] could have existed to arrest the plaintiff," such that qualified immunity would

2   apply.  See Franklin v. Fox, 312 F. 3d 423, 437 (9th Cir. 2002).

3          4.      Conspiracy Claims

4          Plaintiff alleges that defendants are also liable for conspiracy to violate plaintiff's civil

5   rights, pursuant to 42 U.S.C. § 1983 and Cal. Civil Code § 52 et seq.  Because plaintiff fails

6   to establish defendants' liability for a section 1983 violation, however, plaintiff's conspiracy

7   claim fails as to the section 1983 claim.  Furthermore, to the extent plaintiff alleges a

8   conspiracy to violate Civil Code § 52.1, this claim also fails, in view of the following

9   discussion regarding the merits of plaintiff's Bane Act claim.  Accordingly, summary

10  judgment is GRANTED in defendants' favor as to plaintiff's cause of action for conspiracy

11  to violate civil rights.

12         5.      California Civil Code § 52 et seq.

13         Plaintiff's complaint alleges defendants' violation of Cal. Civil Code § 52 et seq.  See

14  Complaint, ¶¶ 33-45.  Plaintiff appeared to make clear at the hearing on the matter that

15  plaintiff is specifically alleging a violation of Cal. Civil Code § 52.1 – known as the Bane Act.

16  Section 52.1, subdivision (a), permits the state Attorney General or any city or district

17  attorney to sue in equity "[w]henever a person or persons, whether or not acting under

18  color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by

19  threats, intimidation, or coercion, with the exercise or enjoyment by any individual or

20  individuals of rights secured by the Constitution or laws of the United States, or of the rights

21  secured by the Constitution or laws of this state . . . ."  Subdivision (b) of section 52.1, by

22  contrast, allows anyone whose rights have been interfered with as described in subdivision

23  (a) to sue for damages or for equitable relief.  See Cal. Civil Code § 52.1(b).

24         Plaintiff here alleges that when he was unlawfully detained by defendants and

25  subjected to false imprisonment, defendants interfered with his federal constitutional rights

26  to be free from illegal detention and false arrest.  Defendants, however, respond that a

27  Bane Act claim fails for two reasons: (1) the claim is barred because plaintiff neglected to

28

                                            13

United States District Court

For the Northern District of California

1   include the Bane Act as a charge in his tort claim filing – a prerequisite to the instant suit;

2   and (2) plaintiff has failed to allege any false arrest, illegal detention, or use of violence

3   coupled with interference of a separate and independent state or federal constitutional right

4   – which the defendants assert the Bane Act requires.

5          As to the former objection, it is without merit.  A copy of plaintiff's administrative tort

6   claim is attached as Ex. 16 to the Kallis Declaration.  The claim states, in the "basis of

7   claim" section: "Officers Dennes and Elliott [violated] 52 et seq."  While not a model of

8   specificity, this is sufficient, in the court's view, to satisfy tort claim requirements.

9          As to defendants' latter objection, the question whether section 52.1 requires

10  allegations of violence or threat of violence separate and independent from an alleged

11  unreasonable search and/or arrest, has not been authoritatively answered by the California

12  state courts.  As defendants point out, other district court cases indicate that section 52.1

13  creates a remedy for violations of independent statutes, and that a plaintiff's false arrest

14  claim cannot be a freestanding basis for a § 52.1 claim.  See, e.g., Walker v. City of

15  Hayward, 2008 WL 2357249 (N.D. Cal. 2008).  Notwithstanding this, however, other district

16  court cases, and a review of California case law suggest the opposite: i.e., that the best

17  interpretation of the Bane Act as it currently stands is that section 52.1 does not require

18  violence or threat of violence tied to a separate and independent right.  See Venegas v.

19  County of Los Angeles, 32 Cal.4th 820, 843 (2004); Jones v. Kmart Corp., 17 Cal. 4th 329,

20  334 (1998); Stamps v. Super. Ct., 136 Cal. App. 4th 1441, 1448 (2006); see also Cole v.

21  Doe 1 Thru 2 Officers of City of Emeryville Police Dept., 387 F.Supp. 2d 1084, 1103 (N.D.

22  Cal. 2005)(the "[u]se of law enforcement authority to effectuate a stop, [and] detention

23  (including use of handcuffs). . . can constitute threats, intimidation, or coercion under the

24  Bane Act")(relying on California cases interpreting the Bane Act).

25          Ultimately, the court need not resolve this dispute here.  For, even if the court were

26  to conclude that plaintiff need not prove violence or threat of violence tied to a separate

27  independent right in order to state a Bane Act claim, and that any alleged unlawful

28

1   detention and imprisonment by defendants may on its own qualify as a direct violation of

2   the Bane Act, plaintiff's claim would still substantively fail.  For the reasons already

3   articulated in connection with plaintiff's section 1983 claim, the court concludes that no

4   wrongful detention actually occurred here.  Thus, no actionable claim premised on a

5   wrongful detention can be stated under the Bane Act.

6        Accordingly, summary judgment in defendants' favor as to plaintiff's claim pursuant

7   to Cal. Civil Code § 52.1 is similarly GRANTED.

8   C.    Conclusion

9        For all the foregoing reasons, defendants' motion for summary judgment is

10  GRANTED.  Specifically, defendants' motion is GRANTED with respect to plaintiff's first

11  cause of action alleging violation of 42 U.S.C. § 1983; GRANTED with respect to plaintiff's

12  second cause of action alleging violation of Cal. Civil Code § 52;  and GRANTED with

13  respect to plaintiff's third cause of action alleging conspiracy to violate 42 U.S.C. § 1983

14  and Cal. Civil Code § 52.

15

16  **IT IS SO ORDERED.**

17  Dated: March 19, 2010

18  _____
    PHYLLIS J. HAMILTON
    United States District Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California